# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

ARRON SCHULTZ
   Plaintiff,

17 C 908

Case No. _____

vs.

RON KRAMER, SHERIFF OF
EAU COUNTY, CO. BARNET
CO. JANE TURNER, CO. HIGLEY,
CO. TODD JOHNSON, CO. OATS,
CO. ZWIEFELHOFER, CO. JOHN
DOE, CO. ALTMAN and CO. PETERSON,
et. al.,
In their personal and official capacities
   Defendants.

2017 NOV 29 AM 10:48
PETER OPPENEER
CLERK US DIST COURT
WD OF WI

DOC NO
REC'D/FILED

## CIVIL RIGHTS COMPLAINT 28 U.S.C.
## § 1331 AND UNDER 28.U.S.C.§ 1983

COMES NOW the Plaintiff, ARRON. SCHULTZ, in his own proper person, moves this Honorable Court, pursuant to all Federal Rules Of Civil Procedures, files this his Civil Rights Complaint Under 28 U.S.C. § 1331, and U.S.C. § 1983, and in support for this good faith pleading and cause of action will state the followings:

1

## A. PARTIES

### 1. Plaintiff(s)

1. Arron Schultz
   Eau Claire County Jail
   710 2nd Avenue
   Eau Claire, WI 54701

### 2. Defendant(s)

2. Ron Kramer
   Sheriff of Eau Claire County
   710 2nd Avenue
   Eau Claire, WI 54701

3. CO. Barnet
   Sheriff Deputy Eau Claire County Jail
   710 2nd Avenue
   Eau Claire, WI 54701

4. CO. Jane Turner
   Sheriff Deputy Eau Claire County Jail
   710 2nd Avenue
   Eau Claire, WI 54701

5. CO. Higley
   Sheriff Deputy Eau Claire County Jail
   710 2nd Avenue
   Eau Claire, WI 54701

6. CO. Todd Johnson
   Sheriff Deputy Eau Clair County Jail
   710 2nd Avenue
   Eau Claire, WI 54701

7. CO. Oates
   Sheriff Deputy Eau Claire County Jail
   710 2nd Avenue
   Eau Claire, WI 54701

### Defendants Cont.

8. CO. Zwiefelhofer
   Sheriff Deputy Eau Claire County Jail
   710 2nd Avenue
   Eau Claire, WI 54701

9. CO. JOHN DOE
   Sheriff Deputy Eau Claire County Jail (In training)
   710 2nd Avenue
   Eau Claire, WI 54701

10. CO. Altman
    Sheriff Deputy Eau Claire County Jail
    710 2nd Avenue
    Eau Claire, WI 54701

11. CO. Peterson
    Sheriff Deputy Eau Claire County Jail
    710 2nd Avenue
    Eau Claire, WI 54701

12. Et, al., Reserves the right to add more defendant as Medical staff for refusing subsequent treatment.

# B. PRELIMINARY STATEMENT

This cause of action occured a little over one year ago in the Eau Claire County Jail, while the Plaintiff was housed in a special section of the Detention Facility, that dealt with detainees with special needs. While housed their, his eight (8) year old daughter wrote him a letter, and someone who has control of the mail services decided that is against policy, and federal laws, to arbitrarially, and erroneously destroy the letter because she unknowingly fail to put her return address on the envelope. They knew who it was for. When the Plaintiff was advised of this unreasonable and capricious, not to mention unlawful decision he became extremely upset. As a result the named defendants, stepped outside the scope of their authority, losing the shield of qualified immunity.

In the absence of a C.O.II., at least six (6) sheriff deputies, beat, maced, tazed and abused the Plaintiff, to such a degree that he ended up with severe back injuries, permanent disfigurement and a hernia, that he now require surgery for it removable.

Due in part to his economical condition was unable to afford the needed surgery. And while at an Alternative Revocation Treatment center, the physician advised him that it was dormant for awhile but had surface with a vengeance and ordered him a hernia belt. Now back in the same location where he incured the injury, the staff refuse to allow him access to the temporary treatment, which they caused. This is one of and among other violations that has caused the follow action. He have made numerous request for the belt, as the hernia continues to grow visibly.

C 3

# C. LIST OF VIOLATION

1. Destruction Of Government Property
2. Violation Of Fourteenth Amendment Of United States Constitution. Due Process
3. Excessive Use Of Force
4. Violation Of Policies, Practices And Protocals
5. Violation Of Eighth Amendment U.S. Const. Cruel And Unusual Punishment
6. Abuse Of Authority
7. Reckless Disregards Of Safety And Well-Being With Malicious Intent
8. Deliberation Indifference To The Pain And Suffering While Removing Tazer Spikes From His Body
9. Conspiracy To Obstruct Justice By Destroying Camera Video Of Incident.
10. Lack Of Medical Treatment Of Subsequent Injuries Specifically Hernia

4

## D. STATEMENT OF FACTS.

1. On or about March 30, 2016, Plaintiff was housed in the Special Needs section of the Eau Claire County Jail.

2. At approximately 6:00 a.m. he received a slip of paper stating his mail from his eight year old daughter was destroyed because there was no return address written on the envelope.

3. Plaintiff began to question the reasoning behind this federal law violation, and the C.O. Higley

4. C.O. Higley became belligerent and indifference to the Plaintiff's inquiry, which cause the Plaintiff to respond with indignation as well.

5. C.O. Higley would not provide the name of the individual who made that decision to destroy government property but made a ridiculous reasoning that it could have had "ANTHRAX" inside and they would not have known who to trace it to.

6. Plaintiff felt that was not an adequate response and demanded to see the O.I.C.

7. Plaintiff at this time was in his cell with the door closed and trying to come to grips with the abuse of the process and how best to deal with it.

8. C.O. John Doe came to his door and told him to pack his property because was being moved to a different location but would not explain why and what was going on.

9. C.O. Speedy did not want to address the matter about his letter or why he was being relocated, and would not notify the O.I.C. (Officer In charge).

# STATEMENT OF THE FACTS CONT.'

10. Plaintiff held the slip of paper with the words written on it twice, who the letter was from, his daughter's name and it was destroyed. He could not believe this was policy.

11. At the time he did not know that it had drawings made by his daughter, he was expecting the letter because that was their form of communicating.

12. After several days of making requests for a free envelop and advising different officers that he would grieve the matter, a new development. He was going to be relocated.

15. C.O. Barnet came to his door, with other officers, and ordered him to come out of his cell, or they were coming in to get him by force.

16. When the officers approached the Plaintiff, they came as if it was a tactical raid, and due to the type of psychotropic drugs he was prescribed cause acute anxiety and phobias. He could not fully understand why they were yelling and screaming at him.

17. He back up against the far wall of the cell, fear has seiged his capacity to respond, and he kept asking to speak to the OIC, or Sergeant on duty.

18. C.O. Jane Turner, the only female started screaming but he would not understand what she was saying.

19. C.O. Barnet took out his tazer, and pointed at the Plaintiff, and threatened to use it, if he did not come out of the cell. The Plaintiff kept asking to see a sergeant but the only officers were C.O.I's.

20. Less than ten (10) minutes had passed when all the officers formed a maneuver, that they were going to perform some tactical move, because he recalled hearing one of the officers say, "Ready"!

6.

## STATEMENT OF THE FACT CONT.'

21. The scene appeared surreal because as co. Barnet pointed his tazer, all the Plaintiff could do was grab his blanket and prepare for the tactical assault by the group of CO's.

22. Opened his cell door, and he recall hearing some one yell, "Fire!"

23. Suddenly he heard a sound like "pop", "pop" and two spikes were stuck to his shirt, and had a thin wire attached to the spikes. The adrenalin rush made it have little effect.

24. The next thing the Plaintiff can recall is hearing someone yelling, "Stop resisting!" which was strange because he never moved, he was frozen in time and space, as the officers rushed into the cell, and knocked him down to the floor.

25. They were obvious unsynchronized because one group were pulling him, while another group were holding him down, and he recalled trying to get up and felt a hard pulling of his last ounce of strength, to protect himself from the heavy blows he was receiving from these malfeasors.

26. As he was falling he hit his arm, back, shoulder and face on the bed.

27. While on the floor, and held down, the officers started macing the Plaintiff, repeatedly, until they had used up all the chemical agent.

28. Plaintiff had his left hand behind his back, and the right arm was penned down by one of the officers.

29. Plaintiff could see one of the officers had his right arm, blocking him from complying to their command to place his other arm behind his back.

30. Then the Plaintiff was tazed again while on his stomach and unable to comply due to the other officer CO. Oates holding right arm. He was twisting

7

## STATEMENT OF THE FACTS CONT.

31. The pain of the tazer, lodge in the nap of his back at close range, the chemical agent being sprayed all over his face, and he was unable to move, he had out of shock, dismay and cruelty, had urinated and defecated on himself.

32. Plaintiff could not fully comprehend what kind of infraction had he committed that would merit this level of abusive reaction, and where is the OIC.

33. He could barely breath, and then he was yanked up off the floor, and man handled, even though still not resisting, and taken down stairs.

34. Plaintiff could not see but was made to walk and was taken to intake, placed in a room with only a mattress and blanket.

35. After about ten minutes over the sink, and putting water in his eyes and on his face, he started to regain some sense of reality and what had happened to him.

36. Plaintiff immediately removed his pants, cleaned the feces from his person, and felt the sting of humiliation, embarrassment, and helpless.

37. Plaintiff pleaded with the co.'s to allow him to take a shower due to the condition of his body but they refused.

38. The officer's removed the tazer spikes from his body with deliberate indifference to the tearing of his skin and the unprofessional, and untrained way the spikes were removed. He was bleeding profusely from the process.

39. Plaintiff was screaming, crying and pleading with the officers to have a nurse remove the spikes, one CO. stated "she don't smell you." and some found that amusing because of his reaction to this horrific experience.

8

## STATEMENT OF THE FACTS CONT.'

40. The next morning still no shower, and C.O. Zwiefelhofer, escorted the Plaintiff back upstairs, and placed him in a cell, took photographs and gave him a change of clothes, while making fun of the Plaintiff for his reaction to their way of extraction.

41. He initially claimed that the Plaintiff was receiving several Conduct Reports for non-compliance, disobeying a verbal order, and disorderly conduct.

42. Plaintiff made it absolutely clear he had a right to be upset for the facility unprofessional, and unlawful way they had handled his mail, sent from his eight year old daughter.

43. After C.O. Zwiefelhofer took pictures of all the bruises, marks lascerations, and his back injuries, he left.

44. Several hours later, when a different shift change and a review of what happened was conducted by fair minded, supervisors and staff, a whole new perspective emerged.

45. Plaintiff was returned back to the same Special Needs Section of the facility where the incident had occurred

46. There was another inmate who observed what had happened, right next door, his name is Cecil Allen and he told him that he would be a witness for him to share how he kept asking to speak to a sergeant or OIC, and they would not listen.

47. Cecil Allen also will testify how they were brutalizing him even when he was on the floor, on his stomach not resisting. He heard Plaintiff yell, "you hurting my back!"

48. He said he felt sorry for him because they got mad with him because he was upset about them throwing away his eight year old daughter's letter. He was very sympathetic.

## STATEMENT OF THE FACTS CONT.

49. After twenty-four hours after the incident, the Plaintiff was finally allowed to shower.

50. Now after a different group of officers and superiors were made aware of the circumstances, and the situation, they concluded the matter should have been dealt with differently.

51. More importantly, his U.S. Mail should not have been destroyed.

52. A superior officer should have been notified and due to the location of the Plaintiff, in the Special Needs classification he required corrective counselling, rather than a group of COI's taking it upon themselves to execute an extraction because the Plaintiff was upset that the letter from his eight (8) year old daughter was destroyed. He had the right to be upset, and inquire about the practice, policy or procedure.

53. The sergeant decided to disregard the numerous Conduct Reports that they wanted to write, due to the violations of the policies, practices and procedures that should have been taken.

54. Several officers such as CO. Peterson, and Altman, said they would not have handled the matter in that manner.

55. Plaintiff had to see the doctor at the jail, and he noticed the results of the incident and perscribed Ibeprophine.

56. Plaintiff complained about internal pain in his groin and the doctor, said it would eventually go away.

57. However, a year later he has develop a hernia and the physician at the Milwaukee Secure Detention Facility, the injury could have occured at least a year earlier, and ordered a hernia belt, that he now must wear while awaiting surgery.

## CAUSE OF ACTION WITH VIOLATIONS

### GROUND ONE

#### Destruction of Government Property

Plaintiff restates the statement of fact in its entirety set forth in paragraphs 1 thru 57 as the cause for this action.

The staff member who is assigned by the Sheriff or the O.I.C. to handle the United States Postal Service must take an oath, separate from other agents. It is clearly established law, that all mail once it has been post marked by the Post Office, it becomes federal property until it has been delivered to the destination, and person it is addressed to. Whoever took it upon themselves to destroy the Plaintiff's daughter's mail have violated Federal law, and must be held accountable.

### GROUND TWO

#### Violation of Fourteenth Amendment of U.S. Const. Due Process

Plaintiff restates the statement of fact in its entirety set forth in paragraphs 1 thru 57 as the cause for this action.

When these defendants decided to extract the Plaintiff from his cell, by force, without following clearly established procedures violated his constitutional rights, and created a situation that caused unnecessary suffering. It made an already difficult situation that much worse.

Plaintiff was already housed in a Special Needs section of the jail facility, because he had been reclassified by staff. Those inmates, or detainees have a unique position that demand staff deal with them with a different set of rules, standards and procedures, to avoid this type of litigation.

11

## GROUND THREE
### Excessive Use of Force

Plaintiff restates the Statement of Fact in its entirety set forth in paragraphs 1 thru 57 as the cause for this action.

The way this extraction was executed seemed to be more of an exercise, and training operation, than a need to remove, a non-violent, non-aggressive and totally inept, special needs inmate.

Clearly, it was done to impress CO. Jane Turner and some Machoism because of how they were instructing the female deputy. or correctional officer. The level of force used on the Plaintiff, was totally without merit. It has caused him to develop a hernia, that require surgery.

## GROUND FOUR
### Violation of Policies, Practices And Protocals

Plaintiff restates the Statement of Fact in its entirety set forth in paragraphs 1 thru 57 as the cause for this action.

Clearly, this was more of a training exercise for the new correction's officer, and the female because the inmate did not demonstrate much of a threat. If this would have been a two hundred (200 lb.) pound, muscular inmate that was being extracted, perhaps the policies, and practices that are in place, in all probability would have eluded to, rather than, what actually occurred.

Plaintiff had the right of expectations to be treated according clearly established policies and protocals when dealing with issues in the jail facility.

There obviously were breakdowns in these areas because normally Conduct Reports and Incident Reports would have been forthcoming.

# GROUND FIVE

## Violation Of The Eighth Amendment Of United States Constitution Prohibiting Cruel And Unusual Punishment

Plaintiff restates the statement of fact in its entirety set forth in paragraphs 1 thru 57 as the cause for this action.

When the treatment of a matter is given a priority the bar that reaches a level where a person in custody has been pushed to a point that he or she loses control of their natural functions, as adults, something horrendous must have occurred.

The Plaintiff was holding a blanket to minimize the effects of the mace, and protect his eyes, mouth, nose and body from the vicious assault being waged upon him by these ill-trained, unsupervised and reckless malfeasors.

At no time did his behavior warrant this level of abuse, torture or brutality. It is obvious due to the fact that he did not receive any type of disciplinary or misconduct report by the supervisors once they were made aware of the incident.

Moreover, the mere fact that he was returned back to the Special Needs section of the facility, speaks volume to this issue, as well as the manner in which it was handled.

The callous disregards for the safety and well-being of the Plaintiff cannot be justified by more training, and the inadequate staffing of supervisory personel at the time of the incident.

It was totally unusual for the staff and these defendants to use someone with special needs as a training exercise. The subsequent treatment after the fact was cruel, beyond the normal operating procedures, and should have never been allowed to go to that level of abusive misconduct. Some type of reprimand was also imposed on several officers as well.

13

## GROUND SIX
### Abuse of Authority

Plaintiff restates the statement of Fact in its entirety set forth in paragraphs 1 thru 57 as the cause for this action.

Under the qualified immunity doctrine staff can execute extractions of unruly, and disruptive inmates, from their cell, and not face liabilities or disciplinary actions. If some form of review becomes necessary to determine whether their actions were reckless, malicious and indifferent, the umbrella does not remain open.

These officers, were acting under CO. Barnet, CO. Oates and CO. Jane Turner's misguided quest to experience a real time extraction of a 'Specially Housed' inmate. The abuse of authority can be viewed by the nature of the extraction, as he suffer severe back and groin injuries that are cronic in nature, and a continuation of pain and suffering

## GROUND SEVEN
### Reckless Disregards For Safety And Well-Being With Malicious Intent

Plaintiff restates the statement of Fact in its entirety set forth in paragraphs 1 thru 57 as the cause for this action.

Recklessness can be seen as to why was extraction the only option available. The safety issue is also paramount in making this type of action, a last resort procedure. CO. Barnet did not even attempt to defuse the situation, nor did CO. Jane Turner, as if she wanted to experience some type of real life fantasy. Her marks from her finger nails show she was in the mix of the incident, yelling orders as the Plaintiff was being brutalized with malicious intent to inflict as much pain as possible. Something was done that never should have happened.

14

## GROUND EIGHT
### Deliberate Indifference To The Pain And Suffering While Removing Tazer Spikes From His Body

Plaintiff restates the statement of Fact in its entirety set forth in paragraphs 1 thru 57 as the cause for this action.

There were several tazer spikes lodged in the Plaintiff's body, and they were fired at close range. because of the point blank range, the two head spikes went much deeper than normal. The power of the discharge is designed to gage a travel distance of thirty (30) feet, when the CO. Barnet shot the gun into the Plaintiff's back, he was standing over him, less than three (3) feet. This caused the spikes to penetrate into the tissue, and fleshly or meaty portion of his lower back.

Instead of notifying medical, the CO. was pulling, twisting and tugging on the spikes trying to remove it. This left permanent scaring and caused the Plaintiff to experience excruciating pain.

## GROUND NINE
### Conspiracy To Obstruct Justice By Destroying Camera Video Of Incident

Plaintiff restates the statement of Fact in its entirety set forth in paragraphs 1 thru 57 as the cause for this action.

Plaintiff was placed in a room downstairs in book in area, or commonly known as in take. The documents he had brought with him to challenge his termination, and the grievances he filed about this matter, were mysteriously lost, misplaced or deliberately destroyed.

CO. Grant advised the Plaintiff to file a grievance and she would respond that she did in fact, inventory his personal property and there were folders with documents, papers and other items to be stored. She admitted after a thorough search of the property room, she could not locate his stored personal property, but she would testify, he had these items.

15

## GROUND TEN

### Lack of Medical Treatment Of Subsequent Injuries Specifically His Developing Hernia

Plaintiff restates the statement of fact in its entirety set forth in paragraphs 1 thru as the cause for this action.

After revisiting the medical department here at the Eau Claire County Jail, where the Plaintiff received his injuries, he was seen by the nurse, after requesting he be allowed to have his doctor prescribed 'hernia belt' and reinterated the constant pain in his lower back due to the impact he suffered against the bed and toilet as he was thrown down on the cement floor, by the aforementioned defendants.

Another co-pay, because Nurse Denise Hurless, of Correctional Healthcare Company, advised him, that only the doctor could approve the belt, or order one himself. She would give him Ibeprophen, and put him on the list for next Thursday. She did check the hernia growth to make sure it was a valid claim.

Plaintiff did inform her that the surgery is necessary, as he have notice how the belt seemed to slow the growth of the hernia. It served very little to lessen the lower back pain. She could easily see the bruise that still remains, after over one (1) year since the incident. The back pain does not allow him to remain standing for very long. The psychological effect of seeing this physical abnormality in his private area cannot be put into words, since he have no idea what the long term effects are, or what damage it has already caused, he continue to endure mental anguish and emotional duress.

These malfeasors are reluctant to accept the responsibility for the injuries, one of their doctors, at the residential treatment center in Milwaukee, Wisconsin, confirmed several months ago, that due to the level of growth it clearly was at least one (1) year old. At that time he was here at the Eau Claire County Jail, and no other incident in his life came remotely close to what he had experienced during the extraction from his cell by these defendants, in the Special Needs section of the Eau Claire Co. Jail.

16

## E. SUMMARY ARGUMENT

Plaintiff believes there are unexplained events that appear to be a systematic effort to retaliate against him for his removable from the MSDF, when he started to complain about his medical condition, that originated at the Eau Claire County Jail, in Eau Claire, Wisconsin.

Plaintiff was removed and returned to the County Jail for a Conduct Report, that was written which did not make much sense. Immediate termination without the opportunity to appeal the ruling that was erroneous, arbitrary and unreasonable.

When Plaintiff returned to Eau Claire County Jail, his personal property, and all his documents about the grievances were mysteriously missing. CO. Grant will provide sworn testimony that his documents were inventoried by her but she cannot find the important documents.

## F. RELIEF SOUGHT

1. Plaintiff seek no retalitory actions by the named defendants who are presently employed here at Eau Claire County Jail.
2. Plaintiff seek to have the necessary surgery to remove the hernia.
3. Plaintiff seek to have the belt specifically designed for his medical injury.
4. Plaintiff seek to be sent to a specialist for lower back pain, or in the alternative, a chiropractor to eleviate the pressure on his spinal collum.

# F. RELIEF SOUGHT CONT.

5. Plaintiff a trial by Jury who can award punitive damages for the misconduct by these defendants

6. Plaintiff seeks one point five million ($1,500,000.00) dollars for the pain and suffering. collectively for all defendants.

7. Plaintiff seeks compensatory damages of one million ($1,000,000.00) dollar for emotional duress and mental anguish.

8. Plaintiff seeks five hundred thousand ($500,000.00) dollars in loss wages due to his inability to work,

9. Plaintiff seeks a Declaratory Judgement against Sheriff Ron Kramer. about the incident and how it does not reflect the standards, policies and practices of his Sheriff Department.

10. Finally, a letter of reprimand placed on all party defendants for their misconduct concerning the above-styled claims.

WHEREFORE this Honorable Court grant access to this Court, and allow this his good faith, and meritorious Civil Rights Complaint to move forward, that relief can be granted and any other relief it deems just and fair.

Respectfully Submitted
Aaron Schultz
Aaron Schultz
Plaintiff in Pro Se

cc: filed
    Clerk

18